Matthew C. Vella
State Bar No. 314548
mvella@princelobel.com
PRINCE LOBEL TYE LLP
580 Broadway, Unit 207
Laguna Beach, CA 92651
Telephone: (617) 456-8191
Facsimile: (617) 456-8100

Christopher E. Hanba (*pro hac vice* pending)
Texas Bar No. 24121391
chanba@princelobel.com
PRINCE LOBEL TYE LLP
500 W. 5th Street, Suite 1205
Austin, Texas 78701
Telephone.: (512) 737-2414
[Additional Counsel Listed
On Signature Page]

Attorneys for Plaintiff ALPHA MODUS, CORP.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHA MODUS, CORP.,<br><br>      Plaintiff,<br><br>   v.<br><br>STRATACACHE, INC.,<br><br>      Defendant. | Case No. 2:25-cv-11234<br><br>**PLAINTIFF ALPHA MODUS, CORP'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Stratacache, Inc. ("Stratacache" or "Defendant") for infringement of United States Patent Nos. 11,049,120 (the "'120 Patent"), 11,301,880 (the '880 Patent"), 11,042,890 (the "'890 Patent"), 12,039,550 (the "'550 Patent"), 12,026,731 (the "'731 Patent"), 12,354,121

(the "'121 Patent"), and 12,423,718 (the "'718 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.    Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.    Upon information and belief, Defendant Stratacache, Inc. is a corporation organized and existing under the laws of Ohio with a principal place of business located at 40 N. Main Street, Dayton, Ohio 45423 and may be served in the State of California through its registered agents at CT Corporation System, 330 N. Brand Blvd., Glendale, California 91203.

## JURISDICTION AND VENUE

3.    This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.    This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.    This Court has personal jurisdiction over Stratacache at least because Stratacache maintains an office in Los Angeles, CA, and engages in continuous and systematic business activities within this District, including conduct giving rise to this action.

6.    Stratacache has conducted and does conduct business within the State of California.

7.    Stratacache has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.    This Court has personal jurisdiction over Stratacache at least because Stratacache has made, used, offered to sell, sold, or put into service the accused

products, systems, or services within the State of California and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Central District of California. Stratacache, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.      This Court likewise has personal jurisdiction over Stratacache at least because, on information and belief, Stratacache has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Stratacache would not offend traditional notions of fair play and substantial justice.

10.      This Court has specific personal jurisdiction over Stratacache in this action pursuant to due process and the California Long Arm Statute because the claims asserted herein arise out of or are related to Stratacache's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b), because Stratacache states that it has an office in Los Angeles, CA, and upon information and belief, maintains a job listing at 818 W. 7th St, Los Angeles, CA 90017 which       constitutes       a       regular       and       established       place       of       business.

1    https://stratacache.com/en/company/;

2    https://www.indeed.com/viewjob?jk=dfa57a5d6c1c069a.

3       12.    Stratacache has transacted business in this District, and has committed

4    acts of direct and indirect infringement in this District

5                **ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY**

6       13.    Alpha Modus Corp. specializes in the development of innovative retail

7    technologies.

8       14.    At the core of Alpha Modus's technology portfolio, including the Asserted

9    Patents, is the capability to analyze consumer behavior and product interaction in real-

10    time. This advanced capability allows businesses to dynamically adjust their marketing

11    strategies to meet the immediate needs of consumers at pivotal purchasing decision

12    moments.

13       15.    Alpha Modus, in an effort to ensure transparency and accessibility,

14    maintains a comprehensive presentation of its patent portfolio on its official company

15    website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent

16    portfolio provided on Alpha Modus's website lists the Asserted Patents.

17       16.    Alpha Modus has entered into several intellectual property licensing

18    agreements outside of litigation. These agreements are indicative of Alpha Modus's

19    commitment to legally disseminating its patented technology.

20

21                          **THE '120 PATENT**

22       17.    Alpha Modus is the owner by assignment from the inventors, Michael

23    Garel and Jim Wang, of all right, title, and interest in and to United States Patent No.

24    11,049,120 (the "'120 Patent") titled "Method And System For Generating A Layout

25    For Placement Of Products In A Retail Store," including the right to sue for all past,

26    present, and future infringement. A true and correct copy of the '120 Patent is attached

27    to this Complaint at Exhibit A.

28       18.    The '120 Patent issued from U.S. Patent Application No. 16/837,577 filed

1  on April 1, 2020, which in turn is a continuation of application No. 14/335,429, filed
2  on Jul. 18, 2014.

3      19.    The Patent Office issued the '120 Patent on June 29, 2021, after a full and
4  fair examination.

5      20.    The '120 Patent is valid and enforceable.

6      21.    The '120 Patent introduces a novel system for tracking customer
7  movement and for optimizing the layout of products provided within a retail store
8  setting.

9      22.    The '120 Patent addresses the emerging challenges in the retail sector,
10 particularly for brick-and-mortar stores, in the context of monitoring and analyzing
11 consumer behavior in the retail store in order to better optimize the layout of product
12 available within the store using that information and analysis thereof. The patent
13 provides innovative solutions to enhance in-store customer experiences and counter the
14 competitive pressures from online retail.

15     23.    The inventors of the '120 Patent recognized the need for brick-and-mortar
16 retailers to adapt to the changing consumer behavior in order to better optimize the
17 layout of products within the retail store using behavior information from consumers.
18 The patent offers a solution by integrating technology to analyze customer interactions
19 with products in real-time, providing updated store layout suggestions by analyzing
20 that information in order to enhance realized purchases and revenues from shoppers.

21     24.    The '120 Patent provides several advancements over previous methods,
22 such as real-time analysis of customer traffic within the store as well as customers'
23 interactions with products, and utilizing this data to improve the layout of products
24 available in the store.

25     25.    The '120 Patent describes and claims a specific system incorporating
26 servers, video imaging devices such as cameras, and information monitoring devices
27 to monitor customer movement and generate improved store layouts utilizing data
28 analysis.

PLAINTIFF ALPHA MODUS, CORP.'S              5
COMPLAINT FOR PATENT INFRINGEMENT

26.   Claim 1 of the '120 Patent reads:

1. A method comprising:

(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein

   (i) the retail store has a first layout of products within and about the retail store,

   (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

   (iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,

   (iv) the one or more information monitoring devices comprise one or more video image devices,

   (v) the step of gathering information using the one or more information monitoring devices comprises

      (A) gathering traffic information of the persons within and about the retail store, wherein the traffic information comprises (I) tracking movement of the persons relative to the one or more information monitoring devices, (II) identification of one or more stops that the persons make within and about the retail store, and (III) tracking position and duration of stop of the persons for each of the one or more stops,

      (B) gathering product interaction information based upon type of interactions the persons had with one or more products in the retail store, wherein the type of product

interactions are selected from a group consisting of (I) the one or more products are viewed by the persons at each of the one or more stops, (II) the one or more products are picked up by the persons at each of the one or more stops, (III) the one or more products are carried away by the persons at each of the stops, and (IV) combinations thereof, and

      (C) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information gathered by the information monitoring devices about the shopping activities of the plurality of persons to generate a layout analysis, wherein the analyzed information comprises the tracking information, the product interaction information, and the object identification information; and

(c) utilizing the layout analysis to modify the first layout to generate a second layout of the products within and about the retail store.

## **THE '880 PATENT**

27.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit B.

28.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

29.    The '880 Patent is a continuation of application No. 16/509,343, filed on

1  Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on

2  Jul. 18, 2014.

3      30.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and

4  fair examination.

5      31.    The '880 Patent is valid and enforceable.

6      32.    The '880 Patent introduces a novel method and system for real-time

7  inventory management within a retail store setting, designed to improve operational

8  efficiency and customer experience.

9      33.    The '880 Patent addresses the emerging challenges faced by brick-and-

10  mortar retail stores due to the increasing prevalence of online shopping and

11  showrooming. It provides innovative solutions to enhance in-store customer

12  experiences and counter the competitive pressures from online retail by leveraging real-

13  time data analysis and inventory management strategies.

14      34.    The inventors of the '880 Patent recognized that there existed a significant

15  gap in the brick-and-mortar retail sector's ability to provide real-time, personalized

16  experiences to customers, a feature commonly leveraged by online retailers. The patent

17  offers a method and system that bridges this gap by utilizing technology to analyze

18  consumer behavior and dynamically adjust marketing and inventory strategies.

19      35.    The '880 Patent provides several advantages over the prior art, such as

20  real-time tracking of product interactions and the ability to send immediate responses

21  for inventory adjustments. This method aims to minimize stockouts, enhance customer

22  satisfaction, and boost sales by ensuring the availability of popular products.

23      36.    The '880 Patent describes and claims a specific system incorporating

24  servers, image recognition, and information monitoring devices to manage inventory,

25  track product interactions, and generate real-time responses for inventory management

26  based on data analysis.

27      37.    Claim 1 of the '880 Patent reads:

28      1. A method comprising:

(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein

    (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,

    (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

    (iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

    (iv) the one or more information monitoring devices comprise one or more video image devices,

    (vi) the step of gathering information using the one or more information monitoring devices comprises

        (A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

        (B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

   (i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

   (ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

   (iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

   (iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

## THE '890 PATENT

38.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future

infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit C.

39.    The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

40.    The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

41.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

42.    The '890 Patent is valid and enforceable.

43.    The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

44.    The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

45.    The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.

46.    The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

47.    Claim 1 of the '890 Patent reads:

1. A method comprising:

(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein

    (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,

    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and

    (iii) the step of gathering information using the one or more information monitoring devices comprises

        (A) gathering object identification information of a product that the person is interested in purchasing, and

        (B) gathering sentiment information of the person with respect to the product;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

(ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

(iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

(iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

(v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '550 PATENT

48.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,039,550 (the "'550 Patent") titled "Method for Enhancing Customer Shopping Experience in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '550 Patent is attached to this Complaint at Exhibit D.

49.     The '550 Patent issued from U.S. Patent Application No. 17/590,605, filed on February 1, 2022.

50.     The '550 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a

provisional application filed July 19, 2013.

51.    The U.S. Patent and Trademark Office issued the '550 Patent on July 16, 2024, after a full and fair examination.

52.    The '550 Patent is valid and enforceable.

53.    The '550 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and analyzing consumer behavior in real time—leveraging technologies such as MAC-address tracking, eye tracking, object recognition of goods on shelves, open APIs, and an advertising broker rules engine—to drive sales via engaging, personalized digital customer experiences.

54.    The '550 Patent addresses pressing challenges faced by brick-and-mortar retail in the face of showrooming and the dominance of online retail. It offers novel solutions to provide richer, data-driven, in-store experiences that strengthen customer engagement and counter competitive pressures, by providing real-time analytics and personalized outreach strategies.

55.    The inventors recognized a vital deficiency in conventional brick-and-mortar stores: the lack of real-time insight into in-store shopper behavior that online retailers routinely exploit. The '550 Patent bridges this gap by providing a technological framework that enables retailers to capture behavioral data and dynamically adjust marketing, merchandising, and customer support accordingly.

56.    The '550 Patent offers several advantages over the prior art, including real-time behavior monitoring capabilities and the ability to deliver on-the-spot, personalized outreach via interactive displays or sales assistance informed by tracking data—thereby enhancing the relevance of consumer interactions and potentially increasing in-store conversion rates.



FIG. 1



FIG. 2

57.     The '550 Patent describes and claims a specific system architecture that includes information monitoring devices (e.g., MAC tracking, eye tracking, object identification technologies) to gather and analyze real-time behavioral and demographic data, which then drives interactive outputs like demographic-aware displays, assistance prompts at shelves, and purchase facilitation.

58.     Claim 1 of the '550 Patent reads:

1. A method comprising:

(a) obtaining an information analysis about the shopping activities of a
        plurality of persons, wherein,

(i) the information analysis is an analysis of gathered information by one or more information monitoring devices about shopping activities of a plurality of persons,

(ii) the gathered information comprises gathered traffic information of the plurality of persons, wherein the gathered traffic information comprises traffic information gathered by at least one of the one or more information monitoring devices, and

(iii) the gathered information further comprises gathered product interaction information of the plurality of persons, wherein

(A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more information monitoring devices, and

(B) the product interaction information is based upon type of interactions the persons had with one or more products, and

(iv) the gathered information further comprises gathered object identification information, wherein

(A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

(B) the object identification information comprises the one or more products that the persons interacted with during the product interactions;

(b) providing the information analysis to a brand entity for enhancing in-store shopping experience of customers of one or more brick-and-mortar retail stores, wherein

1           (i)  the brand entity is an entity that provides one or more brand

2                   products to one or more brick-and-mortar retails store; and,

3    (c) enhancing the in-store shopping experience of the customers of the

4           one or more brick-and-mortar retail stores by an experience from the

5           brand entity selected from the group consisting of

6           (i)  engagement of the customer based upon the information

7                   analysis, wherein the engagement is received by the customer

8                   using one or more displays and content of the engagement

9                   being displayed on the one or more displays is selected based

10                   upon the information analysis and based upon the one or more

11                   brand products,

12           (ii) engagement of the customer based upon the information

13                   analysis, wherein the engagement is received by the customer

14                   by a second person at the brink-and-mortar retail store who can

15                   directly interact with the customer based upon (A) the

16                   information analysis received by the second person by an

17                   electronic communication sent to the second person by a

18                   system at the brink-and-mortar retail store and (B) based upon

19                   the one or more brand products,

20           (iii) provision of marketing or advertising information directed to

21                   the customer based upon the analyzed information and based

22                   upon the one or more brand products, wherein the marketing or

23                   advertising information is received by the customer through a

24                   display at the one or more brick-and-mortar retail stores or by

25                   receiving the marketing or advertising information on a mobile

26                   device of the customer, and

27

28

1    (iv) provision of a coupon directed to the customer based upon the

2    analyzed information, wherein the coupon is received by the

3    customer either as a printed out coupon or as a digital coupon.

4

5    **THE '731 PATENT**

6    59.    Alpha Modus is the owner by assignment from the inventors, Michael

7    Garel and Jim Wang, of all right, title, and interest in and to United States Patent No.

8    12,026,731 (the "'731 Patent") titled "Method For Personalized Marketing And

9    Advertising Of Retail Products," including the right to sue for all past, present, and

10    future infringement. A true and correct copy of the '731 Patent is attached to this

11    Complaint at Exhibit E.

12    60.    The '731 Patent issued from U.S. Patent Application No. 18/100,377 filed

13    on January 23, 2023.

14    61.    The '731 Patent is a continuation of application No. 17/590,605, filed on

15    Feb. 1, 2002.

16    62.    The Patent Office issued the '731 Patent on July 2, 2024, after a full and

17    fair examination.

18    63.    The '731 Patent is valid and enforceable.

19    64.    The '731 Patent introduces a novel method for obtaining an information

20    analysis of a shopper's activities, for tracking the shopper using information

21    monitoring devices to determine location, and for providing targeted communications

22    to that shopper based on their shopping history and real-time location.

23    65.    The '731 Patent addresses the emerging challenges in the retail sector,

24    particularly for brick-and-mortar stores, in the context of delivering personalized

25    marketing and advertising tied to in-store behavior and purchase activity. The patent

26    provides innovative solutions for enhancing consumer engagement and driving sales

27    by delivering targeted coupons, promotions, and product information directly to

28    shoppers.

66.    The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

67.    The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

68.    The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

69.    Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:

(a) obtaining an information analysis about the shopping activities of the person, wherein,

(i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,

(ii) the gathered information comprises gathered product interaction information of the person, wherein

(A) the gathered product interaction information comprises product interaction information gathered by at least one

of the one or more first information monitoring devices, and

(B) the product interaction information is based upon shopping by the person of one or more first products,

(b) tracking the person using one or more second information monitoring devices to determine the location of the person;

(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises

(i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and

(ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of

(A) a product communication of marketing or advertising information   regarding the product,

(B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and

(E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## THE '121 PATENT

70.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,354,121 (the "'121 Patent") titled "Method And System For Shopping In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '121 Patent is attached to this Complaint at Exhibit F.

71.     The '121 Patent issued from U.S. Patent Application No. 18/651,410 filed on April 30, 2024, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

72.     The Patent Office issued the '121 Patent on July 8, 2025, after a full and fair examination.

73.     The '121 Patent is valid and enforceable.

74.     The '121 Patent introduces a novel system for tracking customer movement, for tracking products retained while shopping, for tracking to a point-of-sale area, and for interfacing with this information in the point-of-sale area for payment of the products.

75.     The '121 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring products retained for purchase and for allowing purchase of the products by the shopper within the point-of-sale area. The patent provides innovative solutions to enhance in-store customer experiences and to increase the speed and efficacy of the shopper's purchase transaction.

76.     The inventors of the '121 Patent recognized the need for brick-and-mortar

retailers to adapt to the changing consumer behavior in order to better optimize the shopper's purchase experience in a retail store by recording the users location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store.

77.    The '121 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the speed and ease of the customer's purchase experience.



FIG. 1

FIG. 2

78.    The '121 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and items selected for purchase, maintain a list of items

selected for purchase, and providing for purchase of such items in the point-of-sale area of the retail store.

79.    Claim 1 of the '121 Patent reads:

1. A method comprising using a system comprising a server, one or more information monitoring devices, and one or more databases, wherein the method comprises:

(a) using at least one of the one or more information monitoring devices to identify a first person at a retail store, wherein

   (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

   (ii) the one or more first information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks, and

   (iii) the one or more information monitoring devices are operably connected to (A) the server, (B) the one or more databases, or (C) both;

(b) using at least one of the one or more of the information monitoring devices to gather shopping information of the first person at the retail store, wherein

   (i) the gathered shopping information comprises gathered traffic information of the first person, wherein

      (A) the gathered traffic information comprises traffic information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the traffic information comprises identification of one or more stops that the first person makes within and about the retail store,

   (ii) the gathered shopping information further comprises gathered product interaction information of the first person at the retail store, wherein

(A) the gathered product interaction information comprises product interaction information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the product interaction information is based upon type of product interactions the first person had with one or more products at the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products viewed by the first person at the retail store at each of the one or more stops, (II) the one or more products picked up by the first person at the retail store at each of the one or more stops, (III) the one or more products put down by the first person at the retail store at each of the one or more stops, ((IV) the one or more products carried away by the first person at the retail at each of the one or more stops, and (V) combinations thereof, and

   (iii) the gathered shopping information further comprises gathered object identification information, wherein

(A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

1    (B) the object identification information comprises the one

2    or more products that the first person interacted with

3    during the product interactions; and

4  (c) analyzing by the system, in real time, the gathered shopping

5    information to generate and maintain a list of the one or more

6    products that the first person interacted with during the product

7    interactions, wherein the list comprises a listing of the products

8    retained by the first person while shopping at the retail store;

9  (d) using the one or more of the information monitoring devices to track

10    the first person to a point-of-sale area of the retail store;

11  (e) in response to the first person being tracked to the point-of sale area,

12    interfacing the system, in real time, with a payment system for

13    payment by the first person of the list of the products retained by the

14    first person while shopping at the retail store at the point-of-sale area;

15    and

16  (f) transmitting a receipt to the first person after payment by the first

17    person, wherein the receipt comprises the list of the products

18    purchased at the retail store.

19

20    **THE '718 PATENT**

21    80.    Alpha Modus filed United States Patent Application Serial No.

22  18/905,975 (which became the '718 Patent) on October 3, 2024, which is a continuation

23  of United States Patent Application Serial No. 18/651,410, filed on April 30, 2024,

24  which is a continuation of United States Patent Application Serial No. 18/519,550, filed

25  on November 27, 2023, which is a continuation of United States Patent Application

26  Serial No. 18/100,377, filed on January 23, 2023, now U.S. Patent No. 12,026,731,

27  which is a continuation of United States Patent Application Serial No. 17/590,605, filed

28  on February 1, 2022, now U.S. Patent No. 12,039,550, which is a continuation of

United States Patent Application Serial No. 16/837,645, filed on April 1, 2020, now U.S. Patent No.11,301,880, which is a continuation of United States Patent Application Serial No.16/509,343, filed on July 11, 2019, now U.S. Patent No.10,853,825, which is a continuation of United States Patent Application Serial No.14/335,429, filed on July 18, 2014, now U.S. Patent No. 10,360,571. A true and correct copy of the '718 Patent is attached to this Complaint at Exhibit G.

81.    The United States Patent and Trademark Office published the '718 Patent on January 23, 2025.

82.    The '718 Patent introduces a novel method for using information monitoring devices within a retail store to gather information about individual shoppers, including tracking products retained while shopping, monitoring the shopper's movement to a point-of-sale area, and identifying products being purchased at checkout.

83.    The '718 Patent addresses the challenges brick-and-mortar retailers face in understanding customer behavior, ensuring the accuracy of product tracking, and improving real-time interactions between shoppers and sales associates. The application provides innovative solutions that leverage video imaging devices and other monitoring systems to generate actionable data during the shopping and purchasing process.

84.    The inventors of the '718 Patent recognized the need for retailers to adapt to evolving consumer behavior by implementing systems capable of analyzing shopper behavior in real time, maintaining accurate records of retained and being-purchased products, and enabling targeted assistance by sales associates to improve both efficiency and personalization in the purchase experience.

85.    The '718 Patent provides several advancements over prior systems, including the ability to generate and compare lists of products retained and products being purchased, detect discrepancies, and utilize this real-time comparison to automatically select and notify a sales associate. These improvements enhance

1  transaction accuracy, operational speed, and the overall customer experience in the
2  retail environment.

3      86.    The '718 Patent describes and claims a specific system comprising
4  servers, databases, video imaging devices, and other information monitoring devices
5  to gather and analyze shopper information, maintain product lists, and communicate
6  this information to sales associates for direct interaction with shoppers in the store.

7      87.    Claim 1 of the '718 Patent reads:

8  1.A method comprising:

9  (a) using one or more information monitoring devices to gather
10     information about a first person in a group of persons at a retail store,
11     wherein
12        (i) the first person is in proximity of at least one of the one or
13           more information monitoring devices at the retail store,
14        (ii) the one or more information monitoring devices are operably
15           connected to
16              (A) a server,
17              (B) one or more databases, or
18              (C) both,
19        (iii) the one or more information monitoring devices comprise one
20           or more video image devices, and
21        (iv) the step of gathering information using the one or more
22           information monitoring devices comprises
23              (A) gathering information of one or more products that the
24                 first person retained while shopping at the store,
25              (B) tracking the first person to a point-of-sale area of the
26                 retail store, and
27              (C) utilizing the one or more information monitoring
28                 devices to identify one or more being-purchased

products that the person is providing for purchase at the retail store in the point-of-sale area;

(b) analyzing by the system, in real time, the information gathered by the information monitoring devices to

    (i) generate and maintain a list of the one or more products retained by the first person while shopping at the retail store, wherein the list comprises a listing of the products retained by the person while shopping at the retail store;

    (ii) generate a listing of the one or more being-purchased products;

    (iii) comparing the listing of the products retained by the person while shopping at the retail store with the listing of the one or more being- purchased products;

(c) in response to at least some of the comparisons generated by the system, utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and

(d) sending a communication to the sales associate that comprises at least a portion of (i) the information gathered by the information monitoring devices, (ii) the real time analysis, or (iii) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## STRATACACHE

88.    Stratacache is a global digital-technology company specializing in in-store retail analytics, shopper-engagement measurement, and data-driven digital-signage systems deployed throughout retail stores, quick-service restaurants, grocery chains, pharmacies, and other commercial environments. Stratacache markets itself as a provider of real-time, at-scale solutions that combine digital displays, sensor

networks, and data-analytics engines to understand and influence consumer behavior inside physical retail locations.

89.    Stratacache represents that it is heavily research- and development-driven, emphasizing proprietary hardware, video-based analytics, in-store sensors, and cloud-based software platforms capable of generating continuous, real-time data on customer traffic, movement, product interaction, engagement duration, and dwell characteristics. Stratacache's platform integrates computer vision, mobile-device analytics, and sensor-based measurement tools to capture granular, real-time insights about consumer behavior.

90.    Stratacache states that its mission is to provide retailers and brands with advanced shopper-intelligence tools that increase sales conversion, optimize merchandising performance, enhance promotional effectiveness, and improve operational efficiency by turning physical-store behavioral patterns into actionable intelligence.

91.    Stratacache's hardware and software platforms—including Walkbase Analytics, Walkbase Presence, Walkbase Flow, PRN digital-display networks, interactive displays, sensor-based audience-measurement modules, smart-shelf technologies, and Stratacache's in-store retail media network solutions together comprise the "Accused Products" in this case. Stratacache describes these systems as enabling real-time tracking of customer movement, zone-based behavior analysis, foot-traffic measurement, dwell-time analysis, product-interaction detection, and customer-engagement monitoring.

92.    Stratacache advertises that the Accused Products are deployed across a wide range of industries, including retail, quick-service restaurants, grocery chains, pharmacies, automotive dealerships, shopping malls, airports, and other commercial environments.



https://stratacache.com/en/albertsons

93.     Stratacache's own materials further describe the Accused Products as enabling sensors and video analytics to capture metrics such as footfall, device-based presence detection (e.g., Wi-Fi/BLE analytics), heat maps, dwell durations, pathing analysis, zone-level engagement, and real-time behavioral insights.

https://stratacache.com/en/solutions/data-and-analytics

94.     The Accused Products practice the patented systems and methods of the Asserted Patents.

95.     Stratacache has been aware of Alpha Modus and the Asserted Patents at least as early as the filing of this Complaint.

96.    The financial gains accrued by Stratacache through the use of Alpha Modus's patented technology have been substantial, providing Stratacache with competitive advantages in the retail market.

97.    The benefits reaped by Stratacache through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

98.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Stratacache, which has led to significant commercial gains for Stratacache at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I
### (DIRECT INFRINGEMENT OF THE '120 PATENT)

99.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

100.    Stratacache has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '120 Patent, including the Accused Products.

101.    The Accused Products embody a method for gathering information about shopping activities of a plurality of consumer utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '120 Patent.

102.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '120 Patent.

103.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

104.    The Accused Products generate layout information about the retail store and use the information gathered by the system in order to make recommendations to improve the layout of products in the store.

105.    Stratacache has directly infringed the '120 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '120 Patent.

106.    The Accused Products satisfy each and every element of the asserted claim of the '120 Patent either literally or under the doctrine of equivalents.

107.    Stratacache's infringing activities are and have been without authority or license under the '120 Patent.

108.    As a direct and proximate result of Stratacache's infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

109.    Alpha Modus is informed and believes, and on that basis alleges, that Stratacache has been aware of the '120 Patent and its infringement thereof. Despite this knowledge, Stratacache has continued to make, use, sell, and offer for sale the Accused Products.

110.    Alpha Modus is informed and believes that Stratacache knew or was willfully blind to the patented technology of the '120 Patent. Despite this knowledge or willful blindness, Stratacache has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

111.    Alpha Modus is informed and believes that Stratacache has made no efforts to avoid infringement of the '120 Patent, despite its knowledge and understanding that its products and systems infringe the '120 Patent.

112.    Therefore, Stratacache's infringement of the '120 Patent is willful and egregious, warranting an enhancement of damages.

113.    As such, Stratacache has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '120 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys'

fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '120 PATENT)

114.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

115.    Stratacache is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '120 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '120 Patent.

116.    Stratacache's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '120 Patent.

117.    Stratacache's use of the Accused Products demonstrates specific intent to induce infringement of the '120 Patent. Stratacache encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '120 Patent.

118.    Stratacache's knowledge of the '120 Patent, combined with its ongoing use of the Accused Products, demonstrates Stratacache's knowledge and intent that the Accused Products be used in a manner that infringes the '120 Patent.

119.    Stratacache's actions and the manner in which the Accused Products are used in Stratacache's customers' stores, consistent with Stratacache's instructions, demonstrate Stratacache's specific intent to induce infringement of the '120 Patent.

120.    Alpha Modus is informed and believes, and on that basis alleges, that Stratacache knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Stratacache, one or more claims of the '120 Patent.

121.    As a direct and proximate result of Stratacache's induced infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

122. Alpha Modus is entitled to recover from Stratacache compensation in the form of monetary damages suffered as a result of Stratacache's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '880 PATENT)

123. Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

124. Stratacache has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the Accused Products.

125. The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

126. The Accused Products include video image devices.

127. The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

128. The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the persons interacted with during the product interactions.

129. Stratacache has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

130. The Accused Products satisfy each and every element of the asserted claim of the '880 Patent either literally or under the doctrine of equivalents.

131. Stratacache's infringing activities are and have been without authority or license under the '880 Patent.

132.   As a direct and proximate result of Stratacache's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

133.   Alpha Modus is informed and believes, and on that basis alleges, that Stratacache has been aware of the '880 Patent and its infringement thereof.  Despite this knowledge, Stratacache has continued to make, use, sell, and offer for sale the Accused Products.

134.   Alpha Modus is informed and believes that Stratacache knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, Stratacache has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

135.   Therefore, Stratacache's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

136.   As such, Stratacache has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

137.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

138.   Stratacache is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

139.   Stratacache has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '880 Patent.

140.   Stratacache's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. Stratacache encourages, directs, aids, and abets

1  the use and operation of the Accused Products in a manner that infringes the '880
2  Patent.

3      141.  Stratacache's knowledge of the '880 Patent, combined with its ongoing
4  making of, use of, sale of, and offers to sell of the Accused Products, demonstrates
5  Stratacache's knowledge and intent that the Accused Products be used in a manner that
6  infringes the '880 Patent.

7      142.  Stratacache actions and the manner in which the Accused Products are
8  used in Stratacache's customers' stores, consistent with Stratacache's instructions,
9  demonstrate Stratacache's specific intent to induce infringement of the '880 Patent.

10      143.  Alpha Modus is informed and believes, and on that basis alleges, that
11  Stratacache knew or was willfully blind to the fact that it was inducing others, including
12  its customers and staff, to infringe by practicing, either themselves or in conjunction
13  with Stratacache, one or more claims of the '880 Patent.

14      144.  As a direct and proximate result of Stratacache's induced infringement of
15  the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

16      145.  Alpha Modus is entitled to recover from Stratacache compensation in the
17  form of monetary damages suffered as a result of Stratacache's infringement in an
18  amount that cannot be less than a reasonable royalty, together with interest and costs
19  as fixed by this Court.

20  **COUNT V**
21  **(DIRECT INFRINGEMENT OF THE '890 PATENT)**

22      146.  Alpha Modus repeats, realleges, and incorporates by reference, as if fully
23  set forth herein, the allegations of the preceding paragraphs.

24      147.  Stratacache has made, used, offered for sale, and sold in the United States,
25  products and systems that directly infringe the '890 Patent, including the Accused
26  Products.

27      148.  The Accused Products embody a method for customer assistance in a
28  retail store as claimed in the '890 Patent.

149.   The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

150.   The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

151.   The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

152.   Stratacache has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

153.   The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

154.   Stratacache's infringing activities are and have been without authority or license under the '890 Patent.

155.   As a direct and proximate result of Stratacache's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

156.   Alpha Modus is informed and believes, and on that basis alleges, that Stratacache has been aware of the '890 Patent and its infringement thereof.  Despite this knowledge, Stratacache has continued to make, use, sell, and offer for sale the Accused Products.

157.   Alpha Modus is informed and believes that Stratacache knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Stratacache has acted with blatant disregard for Alpha Modus's

1  patent rights with an objectively high likelihood of infringement.

2      158.   Alpha Modus is informed and believes that Stratacache has made no

3  efforts to avoid infringement of the '890 Patent, despite its knowledge and

4  understanding that its products and systems infringe the '890 Patent.

5      159.   Therefore, Stratacache's infringement of the '890 Patent is willful and

6  egregious, warranting an enhancement of damages.

7      160.   As such, Stratacache has acted and continues to act recklessly, willfully,

8  wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying

9  an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys'

10  fees and costs incurred under 35 U.S.C. § 285.

11                              **COUNT VI**

12      **(INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)**

13      161.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully

14  set forth herein, the allegations of the preceding paragraphs.

15      162.   Stratacache is liable for indirect infringement under 35 U.S.C. § 271(b) of

16  at least one claim of the '890 Patent, at least as early as the filing of this Complaint,

17  because it knowingly induces, aids, and directs others to use the Accused Products in

18  a manner that infringes the '890 Patent.

19      163.   Stratacache has implemented and utilized the Accused Products in its

20  customers' stores, which practice the patented methods of the '890 Patent.

21      164.   Stratacache's use of the Accused Products demonstrates specific intent to

22  induce infringement of the '890 Patent. Stratacache encourages, directs, aids, and abets

23  the use and operation of the Accused Products in a manner that infringes the '890

24  Patent.

25      165.   Stratacache's knowledge of the '890 Patent, combined with its ongoing

26  making of, use of, sale of, and offers to sell of the Accused Products, demonstrates

27  Stratacache's knowledge and intent that the Accused Products be used in a manner that

28

1   infringes the '890 Patent.

2       166.   Stratacache's actions and the manner in which the Accused Products are

3   used in Stratacache's customers' stores, consistent with Stratacache's instructions,

4   demonstrate Stratacache's specific intent to induce infringement of the '890 Patent.

5       167.   Alpha Modus is informed and believes, and on that basis alleges, that

6   Stratacache knew or was willfully blind to the fact that it was inducing others, including

7   its customers and staff, to infringe by practicing, either themselves or in conjunction

8   with Stratacache, one or more claims of the '890 Patent.

9       168.   As a direct and proximate result of Stratacache's induced infringement of

10  the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

11      169.   Alpha Modus is entitled to recover from Stratacache compensation in the

12  form of monetary damages suffered as a result of Stratacache's infringement in an

13  amount that cannot be less than a reasonable royalty, together with interest and costs

14  as fixed by this Court.

15                          <u>**COUNT VII**</u>

16              <u>**(DIRECT INFRINGEMENT OF THE '550 PATENT)**</u>

17      170.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully

18  set forth herein, the allegations of the preceding paragraphs.

19      171.   Stratacache has made, used, offered for sale, and sold in the United States,

20  products and systems that directly infringe the '550 Patent, including the Accused

21  Products.

22      172.   The Accused Products embody a system for monitoring and analyzing

23  consumer behavior and product interaction information in a retail store setting, as

24  claimed in the '550 Patent.

25      173.   The Accused Products utilize a server comprising one or more server

26  processors, and a server memory storing computer-executable instructions that, when

27  executed, perform functions covered by at least Claim 1 of the '550 Patent.

28      174.   The   functions   include   gathering   and   analyzing   information   from

information monitoring devices, including video image devices, to track consumer interactions with retail products, identifying products of interest, associating such information with consumer demographic or behavioral data, and generating personalized marketing or promotional content based on the collected information.

175. Stratacache has directly infringed the '550 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '550Patent.

176. The Accused Products satisfy each and every element of the asserted claims of the '550 Patent either literally or under the doctrine of equivalents.

177. Stratacache's infringing activities are and have been without authority or license under the '550 Patent.

178. As a direct and proximate result of Stratacache's infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

179. Alpha Modus is informed and believes, and on that basis alleges, that Stratacache has been aware of the '550 Patent and its infringement thereof. Despite this knowledge, Stratacache has continued to make, use, sell, and offer for sale the Accused Products.

180. Alpha Modus is informed and believes that Stratacache knew or was willfully blind to the patented technology of the '550 Patent. Despite this knowledge or willful blindness, Stratacache has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

181. Alpha Modus is informed and believes that Stratacache has made no efforts to avoid infringement of the '550 Patent, despite its knowledge and understanding that its products and systems infringe the '550 Patent.

182. Therefore, Stratacache's infringement of the '550 Patent is willful and egregious, warranting an enhancement of damages.

183. As such, Stratacache has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '550 Patent, justifying

1  an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys'
2  fees and costs incurred under 35 U.S.C. § 285.

### COUNT VIII

### (INDUCED PATENT INFRINGEMENT OF THE '550 PATENT)

5  184.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully
6  set forth herein, the allegations of the preceding paragraphs.

7  185.   Stratacache is liable for indirect infringement under 35 U.S.C. § 271(b) of
8  at least one claim of the '550 Patent, at least as early as the filing of this Complaint,
9  because it knowingly induces, aids, and directs others to use the Accused Products in
10  a manner that infringes the '550 Patent.

11  186.   Stratacache has implemented and utilized the Accused Products in its
12  customers' stores, which practice the patented methods of the '550 Patent.

13  187.   Stratacache's use of the Accused Products demonstrates specific intent to
14  induce infringement of the '550 Patent. Stratacache encourages, directs, aids, and abets
15  the use and operation of the Accused Products in a manner that infringes the '550
16  Patent.

17  188.   Stratacache's knowledge of the '550 Patent, combined with its ongoing
18  making of, use of, sale of, and offers to sell of the Accused Products, demonstrates
19  Stratacache's knowledge and intent that the Accused Products be used in a manner that
20  infringes the '550 Patent.

21  189.   Stratacache's actions and the manner in which the Accused Products are
22  used in Stratacache's customers' stores, consistent with Stratacache's instructions,
23  demonstrate Stratacache's specific intent to induce infringement of the '550 Patent.

24  190.   Alpha Modus is informed and believes, and on that basis alleges, that
25  Stratacache knew or was willfully blind to the fact that it was inducing others, including
26  its customers and staff, to infringe by practicing, either themselves or in conjunction
27  with Stratacache, one or more claims of the '550 Patent.

28  191.   As a direct and proximate result of Stratacache's induced infringement of

1 the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

2     192.   Alpha Modus is entitled to recover from Stratacache compensation in the
3 form of monetary damages suffered as a result of Stratacache's infringement in an
4 amount that cannot be less than a reasonable royalty, together with interest and costs
5 as fixed by this Court.

**COUNT IX**

**(DIRECT INFRINGEMENT OF THE '731 PATENT)**

8     193.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully
9 set forth herein, the allegations of the preceding paragraphs.

10     194.   Stratacache has made, used, offered for sale, and sold in the United States,
11 products and systems that directly infringe the '731 Patent, including the Accused
12 Products.

13     195.   The Accused Products embody a method for obtaining an information
14 analysis of the shopping activities of consumers, for tracking the location of consumers
15 using information monitoring devices, and for providing product communications and
16 store location information based on such analyses, as claimed in the '731 Patent.

17     196.   The Accused Products utilize servers comprising one or more processors,
18 and server-based databases and applications storing computer-executable instructions
19 that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

20     197.   The functions implemented by the Accused Products include analyzing
21 gathered product interaction information from consumer shopping activities, tracking
22 the consumer's location relative to retail stores, and generating real-time
23 communications including store-specific promotions, coupons, advertising, and
24 purchase options.

25     198.   The Accused Products allow Stratacache to provide targeted
26 communications to consumers, including coupons, marketing messages, and purchase
27 options such as pickup, delivery, and reduced-price offers during limited promotional
28 periods, all in accordance with the claimed inventions of the '731 Patent.

199.    Stratacache has directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

200.    The Accused Products satisfy each and every element of the asserted claims of the '731 Patent either literally or under the doctrine of equivalents.

201.    Stratacache's infringing activities are and have been without authority or license under the '731 Patent.

202.    As a direct and proximate result of Stratacache's infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

203.    Alpha Modus is informed and believes, and on that basis alleges, that Stratacache has been aware of the '731 Patent and its infringement thereof. Despite this knowledge, Stratacache has continued to make, use, sell, and offer for sale the Accused Products.

204.    Alpha Modus is informed and believes that Stratacache knew or was willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, Stratacache has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

205.    Alpha Modus is informed and believes that Stratacache has made no efforts to avoid infringement of the '731 Patent, despite its knowledge and understanding that its products and systems infringe the '731 Patent.

206.    Therefore, Stratacache's infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

207.    As such, Stratacache has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

### (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

208.   Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

209.   Stratacache is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '731 Patent.

210.   Stratacache's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '731 Patent.

211.   Stratacache's use of the Accused Products demonstrates specific intent to induce infringement of the '731 Patent. Stratacache encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '731 Patent.

212.   Stratacache's knowledge of the '731 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Stratacache's knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent.

213.   Stratacache's actions and the manner in which the Accused Products are used by Stratacache's customers, consistent with Stratacache's instructions, demonstrate Stratacache's specific intent to induce infringement of the '731 Patent.

214.   Alpha Modus is informed and believes, and on that basis alleges, that Stratacache knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Stratacache, one or more claims of the '731 Patent.

215.   As a direct and proximate result of Stratacache's induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

216.    Alpha Modus is entitled to recover from Stratacache compensation in the form of monetary damages suffered as a result of Stratacache's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

<u>COUNT XI</u>

<u>(DIRECT INFRINGEMENT OF THE '121 PATENT)</u>

217.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

218.    Stratacache has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '121 Patent, including the Accused Products.

219.    The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products in a retail store setting, as claimed in the '121 Patent.

220.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '121 Patent.

221.    The Accused Products identify and gather traffic information of the shoppers within the retail store.

222.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

223.    The Accused Products identify stops that the shopper makes within the retail store.

224.    The Accused Products are capable of tracking the shopper to a point-of-sale area where the system interfaces with a payment system for payment of the products retained by the shopper for purchase.

225.   Stratacache has directly infringed the '121 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '121 Patent.

226.   The Accused Products satisfy each and every element of the asserted claims of the '121 Patent either literally or under the doctrine of equivalents.

227.   Stratacache's infringing activities are and have been without authority or license under the '121 Patent.

228.   As a direct and proximate result of Stratacache's infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

229.   Alpha Modus is informed and believes, and on that basis alleges, that Stratacache has been aware of the '121 Patent and its infringement thereof. Despite this knowledge, Stratacache has continued to make, use, sell, and offer for sale the Accused Products.

230.   Alpha Modus is informed and believes that Stratacache knew or was willfully blind to the patented technology of the '121 Patent. Despite this knowledge or willful blindness, Stratacache has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

231.   Alpha Modus is informed and believes that Stratacache has made no efforts to avoid infringement of the '121 Patent, despite its knowledge and understanding that its products and systems infringe the '121 Patent.

232.   Therefore, Stratacache's infringement of the '121 Patent is willful and egregious, warranting an enhancement of damages.

233.   As such, Stratacache has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '121 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII

### (INDUCED PATENT INFRINGEMENT OF THE '121 PATENT)

234. Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

235. Stratacache is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '121 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '121 Patent.

236. Stratacache has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '121 Patent.

237. Stratacache's use of the Accused Products demonstrates specific intent to induce infringement of the '121 Patent. Stratacache encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '121 Patent.

238. Stratacache's knowledge of the '121 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Stratacache's knowledge and intent that the Accused Products be used in a manner that infringes the '121 Patent.

239. Stratacache's actions and the manner in which the Accused Products are used in Stratacache's customers' stores, consistent with Stratacache's instructions, demonstrate Stratacache's specific intent to induce infringement of the '121 Patent.

240. Alpha Modus is informed and believes, and on that basis alleges, that Stratacache knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Stratacache, one or more claims of the '121 Patent.

241. As a direct and proximate result of Stratacache's induced infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

242. Alpha Modus is entitled to recover from Stratacache compensation in the

Case 2:25-cv-11234    Document 1    Filed 11/21/25    Page 48 of 53    Page ID #:48

1    form of monetary damages suffered as a result of Stratacache's infringement in an
2    amount that cannot be less than a reasonable royalty, together with interest and costs
3    as fixed by this Court.

**COUNT XIII**

**(DIRECT INFRINGEMENT OF THE '718 PATENT)**

6    243.  Alpha Modus repeats, realleges, and incorporates by reference, as if fully
7    set forth herein, the allegations of the preceding paragraphs.

8    244.  Stratacache has made, used, offered for sale, and sold in the United States,
9    products and systems that directly infringe the '718 Patent including the Accused
10   Products.

11   245.  The Accused Products embody a method for gathering information about
12   shopping activities of consumers utilizing the Accused Products at a retail store, as
13   claimed in at least Claim 1 of the '718 Patent.

14   246.  The Accused Products utilize information monitoring devices, including
15   video image devices and point-of-sale systems, that are operably connected to servers
16   and databases to gather and analyze data on shoppers in real time.

17   247.  The functions implemented by the Accused Products include gathering
18   product information retained by the shopper while shopping, tracking the shopper to a
19   point-of-sale area, and identifying products being provided for purchase at checkout
20   using video imaging and related monitoring technologies.

21   248.  The Accused Products generate and maintain lists of products retained and
22   being purchased, compare the lists in real time, and utilize these comparisons to select
23   sales associates for targeted customer engagement.

24   249.  The Accused Products then send communications to sales associates
25   containing gathered information and real-time analysis, enabling the associate to
26   directly interact with the shopper in the retail store and assist in the purchasing process.

27   250.  Stratacache has directly infringed the '718 Patent in violation of 35 U.S.C.
28   § 154(d) by making, using, offering for sale, selling, and/or operating the Accused

PLAINTIFF ALPHA MODUS, CORP.'S                    48
COMPLAINT FOR PATENT INFRINGEMENT

Products that embody the patented inventions of at least Claim 1 of the '718 Patent.

251.    The Accused Products satisfy each and every element of the asserted claim of the '718 Patent either literally or under the doctrine of equivalents.

252.    Stratacache's infringing activities are and have been without authority or license under the '718 Patent.

253.    As a direct and proximate result of Stratacache's infringement of the '718 Patent, Alpha Modus has suffered and will continue to suffer damage.

254.    Alpha Modus is informed and believes, and on that basis alleges, that Stratacache has been aware of the '718 Patent and its infringement thereof. Despite this knowledge, Stratacache has continued to make, use, sell, and offer for sale the Accused Products.

255.    Alpha Modus is informed and believes that Stratacache knew or was willfully blind to the patented technology of the '718 Patent. Despite this knowledge or willful blindness, Stratacache has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

256.    Alpha Modus is informed and believes that Stratacache has made no efforts to avoid infringement of the '718 Patent, despite its knowledge and understanding that its products and systems infringe the '718 Patent.

257.    Therefore, Stratacache's infringement of the '718 Patent is willful and egregious, warranting an enhancement of damages.

258.    As such, Stratacache has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '718 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIV

### (INDUCED PATENT INFRINGEMENT OF THE '718 PATENT)

259.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

260.    Stratacache is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '718 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '718 Patent.

261.    Stratacache's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '718 Patent.

262.    Stratacache's use of the Accused Products demonstrates specific intent to induce infringement of the '718 Patent. Stratacache encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '718 Patent.

263.    Stratacache's knowledge of the '718 Patent, combined with its ongoing use of the Accused Products, demonstrates Stratacache's knowledge and intent that the Accused Products be used in a manner that infringes the '718 Patent.

264.    Stratacache's actions and the manner in which the Accused Products are used by Stratacache's customers, consistent with Stratacache's instructions, demonstrate Stratacache's specific intent to induce infringement of the '718 Patent.

265.    Stratacache is informed and believes, and on that basis alleges, that Stratacache knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Stratacache, one or more claims of the '718 Patent.

266.    As a direct and proximate result of Stratacache's induced infringement of the '718 Patent, Alpha Modus has suffered and will continue to suffer damage.

267.    Alpha Modus is entitled to recover from Stratacache compensation in the form of monetary damages suffered as a result of Stratacache's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

1

## JURY DEMAND

2      Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to

3  Rule 38 of the Federal Rules of Civil Procedure.

4

## PRAYER FOR RELIEF

5      WHEREFORE, Alpha Modus prays for relief against Stratacache as follows:

6
7
8
9

(A)   An entry of judgment that Stratacache has infringed and is directly infringing one or more claims of each of the '120 Patent, the '880 Patent, the '890 Patent, the '550 Patent, the '731 Patent, the '121 Patent, and the '718 Patent;

10
11
12
13

(B)   An entry of judgment that Stratacache has infringed and is indirectly infringing one or more claims of each of the '120 Patent, the '880 Patent, the '890 Patent, the '550 Patent, the '731 Patent, the '121 Patent, and the '718 Patent;

14
15
16

(C)   An entry of judgment that the '120 Patent, the '880 Patent, the '890 Patent, the '550 Patent, the '731 Patent, the '121 Patent, and the '718 Patent are valid and enforceable;

17
18
19
20
21

(D)   An order pursuant to 35 U.S.C. § 283 permanently enjoining Stratacache, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of '120 Patent, the '880 Patent, the '890 Patent, the '550 Patent, the '731 Patent, the '121 Patent, and the '718 Patent;

22
23
24
25
26

(E)   An order awarding damages sufficient to compensate Alpha Modus for Stratacache's infringement of the '120 Patent, the '880 Patent, the '890 Patent, the '550 Patent, the '731 Patent, the '121 Patent, and the '718 Patent; but in no event less than a reasonable royalty, together with interest and costs;

27
28

1    (F)    A determination that Stratacache's infringement has been willful, wanton,

2            deliberate, and egregious;

3    (G)    A determination that the damages against Stratacache be trebled or for any

4            other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

5    (H)    A finding that this case against Stratacache is "exceptional" and an award

6            to Alpha Modus of its costs and reasonable attorneys' fees, as provided by

7            35 U.S.C. § 285;

8    (I)    An accounting of all infringing sales and revenues of Stratacache, together

9            with post judgment interest and prejudgment interest from the first date of

10           infringement of the '120 Patent, the '880 Patent, the '890 Patent, the '550

11           Patent, the '731 Patent, the '121 Patent, and the '718 Patent; and

12    (J)    Such further and other relief as the Court may deem proper and just.

15  Dated: November 21, 2025        PRINCE LOBEL TYE LLP

17                  */s/ Matthew D. Vella*

18                  Matthew D. Vella
                    California Bar No. 314548

19                  PRINCE LOBEL TYE LLP
                    580 Broadway, Unit 207

20                  Laguna Beach, CA 92651

21                  Tel.: (617) 456-8191
                    Fax:  (617) 456-8100

23  //

24  //

25  //

26  //

27  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christopher E. Hanba (*pro hac vice* pending)
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino (*pro hac vice* pending)
Michigan Bar No. P79104
apellegrino@princelobel.com
Joshua G. Jones (*pro hac vice* pending)
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson (*pro hac vice* pending)
Texas Bar No. 24036157
batkinson@princelobel.com

PRINCE LOBEL TYE LLP
500 W. 5th Street, Suite 1205
Austin, Texas 78701
Tel.: (512) 737-2414

*Attorneys for Plaintiff Alpha Modus, Corp.*

PLAINTIFF ALPHA MODUS, CORP.'S          53
COMPLAINT FOR PATENT INFRINGEMENT